Good morning, Your Honor. This is Scott Hubbard for the Plaintiff in Appellate Matt Strong. I know the Court's read the briefs and are familiar with the issues, so I would just ask to correct the discrepancy in my own brief before going forward. On the very first page of the reply brief, I said, Defense counsel didn't plead readily achievable as an affirmative defense. As I was reviewing the record for oral argument, I note that they did. It doesn't change a darn thing as far as our analysis goes. Could you talk a little louder? I can't hear. I'm sorry, Your Honor. I've got that flu that's been going around. So long story short is the defense, if you look at the very first page of the ARB, I say that the defense didn't plead readily achievable as an affirmative defense. I noticed in the record that they did while I was preparing for oral argument. It doesn't change my analysis, but I try and be accurate whenever possible. So unless the panel has any questions for me, I'd like to reserve the rest of my time. There was – I had a question. One of these barriers that Strong claimed, I didn't know what it meant, and I'm trying to find this phrase that I couldn't understand. I'm sorry. I had it here and I misplaced it. If I understood him right, he was saying it was too steep, that the ramp was too steep and that he couldn't turn his wheelchair around in the bathroom. And I think he was then saying there was – I'm not sure I understood the words. The lock on the toilet stall was too high for someone in a wheelchair or it wasn't below – the handle wasn't below the lock or something like that? I believe those are three separate barriers, Your Honor. One has to deal with the slope of the ramp going into the restaurant. One has to go deal, I believe, with the location of – I believe it was the coat hook in the restroom stall. And the third one, I believe – did you mention the door swinging into the restroom stall? Is that correct? No, it has to do with the lock not being below the handle. With respect to the lock – I couldn't understand exactly what all that meant. Fair enough. The ramp, the accessibility design guidelines provide maximum slopes for paths of travel and ramps. Here's the critical one that I couldn't understand. Insufficient strike side clearance when exiting the restroom. I don't know what strike side clearance is. Yes, Your Honor. Wheelchairs have to approach doors at an angle when you are pulling it open. And so what happens is – I'm going to have to demonstrate what happens is when they approach the door, they come in at an angle so they can grab the door and pull it. If there's not enough clear space, 12 to 24 inches depending on where the door is located, they can't get their wheelchair close enough to grab the handle and push it open. So strike side clearance, if there's insufficient strike side clearance, the disabled person can't open the door and they can get trapped. The flip side of that is if you're approaching the push side of the door, that's called left side clearance. And those also have specific requirements too. Strike side clearance means enough room to move your wheelchair around so you can open the door when it opens toward you. Yes. Okay. Got it. Now I understand. Thank you, Your Honor. Okay. We'll hear from the other side. Good morning, Your Honors. If it pleases the Court, I represent the defendants, Valdez, in this case. I have a couple questions for you. Yes, Your Honor. On the need for an expert and the absence of testimony, I personally we don't confer before the argument, so I don't know what my colleagues think about any of these things. Me neither. For a 2 percent slope, I couldn't tell you whether something had a slope of 1 percent or 3 percent, but I could tell you if it was way more than 2 percent. For example, though I'm not looking at it right now, as I recall from the last time I stood at it, that podium has considerably more than a 2 percent slope. Also, I couldn't tell you exactly what the width of that podium is, but I can tell you that the width is considerably more than 2 feet. I know what a 15 percent slope is because there's a sign on a steep hill when you go down it in your car that tells you it's a 15 percent slope, so the truckers will gear down. And that's a really steep hill. Because so many of these sorts of things are pretty common knowledge, and you don't need to be an expert, I don't understand why the judge found that there was basically no evidence on the plaintiff's side. Because, Your Honor, the Court is absolutely correct. You could give potentially fair estimates. But the problem like if the law requires no more than a 2 percent slope, and that's a legal question that the judge can answer without an expert. If the law requires no more than a 2 percent slope so that somebody can wheel his wheelchair off it, and it's like two and a quarter percent or two and a half percent, yeah, I'd need somebody measuring that with a protractor or other instrument. But if it's 10 percent, I wouldn't. Why can't a person say it looks like more than 2 percent to me? I believe, Your Honor, the problem is the way they presented their evidence. And I think if you read the paragraph before, he basically says, I am disabled, I didn't do the measurements myself, and he goes in specificity. What's the matter with that? I mean, if I'm writing stuff down and I ask my wife to measure the width of something because we're buying some household appliance that day, why can't she hold the tape measure up, I look at it, and I say 37, and she says, yes, 37, and I write down 37. Why isn't that enough so I can testify that there's a 37-inch measurement there even though I didn't measure it myself? The way you put it, Your Honor, you can do that, but that's not what happened here. He basically says I have a photographic memory and I didn't do the measurements, an individual did it. He doesn't disclose who did it, and there's no declaration by this other individual. Kennedy, you don't have to. Anderson v. Liberty Lobby says you draw all inferences in favor of the declarant. I don't see why you don't. Supreme Court opinion. Which is fine. My measurement hypo was we actually did that because we needed a new washer and dryer, and as I remember, it was 36 and a quarter. It could have been 36 and a half. And these, there's nothing, you don't need some kind of super memory to remember a measurement when it was important. I personally took his deposition. When I questioned him, basically, he didn't do any of the things you say he did. He didn't say this person hold the measurement. I'm sorry. Why does your deposition matter? Did the district court consider the deposition? The deposition transcript was attached, Your Honor, and there were discrepancies between, for example, what he had testified at his deposition versus what he put in his declaration. Is that the reason the district court granted some rejection? I can articulate some. For example Is it in the district court's order? Yes, Your Honor. It refers to the deposition? I missed it. Yes, Your Honor. I was just reading it right now. For example, the issue of standing is one of them, Your Honor, where he says No, no, no. Point me to the district court's order. Yes, Your Honor. Referring to the deposition. All right. Thank you. I mean, there is a reference on page 12 of the order where the district court says Plaintiff's recollection of the asserted barriers as stated in his depositions lacks sufficient detail. That's quite different from saying it's inconsistent. Well, the What I'm giving, Your Honor, for example, on the heading standing where the court sided with us that he pleaded that the parking was an issue, and then he testified that he actually didn't drive a car that day, and then in his declaration, again, he raised it as an item of deficiencies. So that's the type of In his declaration here, he does have a lot of stuff where he really does have no personal knowledge, and he's just trying to sneak his expert's rebuttal report through the back door. I think your argument is well taken on that. But this part toward the beginning of his declaration, ER-22, where he says he was present when some other person took measurements of the barriers, and he says this was after he had encountered barriers, and he says, I encountered the following barriers, that the slope of the disabled parking space was more than 2 percent, the aisle slope more than 2 percent, no handle below the lock of the water closet stall door. I took that to mean you go in a toilet, you slide the lock across, and if you're disabled, you need to handle lows so you can pull it from your wheelchair. You correct me if I misunderstood. That stuff, it looked like you'd be able to observe yourself. There's no reason particularly to think that a claimed personal memory of such an observation is false or nonsense or impossible. And he says he saw it, and it's seeable. I don't understand why that's not evidence. Let me elaborate, Your Honor. The problem with that is, as he states he's disabled sitting in a wheelchair and supposedly someone is using some tools and making the measurements, there is no testimony from that person authenticating. Did you hear the question? Did you hear the question? Judge Kleinfeld asked you about the door lock. He didn't ask you about measurements. He didn't ask you about another person. Forgive me, Your Honor. Okay. Let me have it one more time. You know, it's useful for counsel to listen when a judge asks a question instead of thinking about something else. That's why we ask these questions. I apologize, Your Honor. You shouldn't have to ask a judge to repeat the question because you weren't listening to it. I thought that was my mistake. Well, I don't think you were. The question was pretty straight. I got it. The question is, look, you can tell where a door latch is. It doesn't take superhuman memory to remember where the door latch was. He doesn't need anybody's help. He says he went there. He looked at the door latch. It's in the wrong place. Why isn't that good enough? Well. You got the question? Yeah. Okay. If he's presenting his personal from his talking about from personal knowledge, that should be good enough. Okay. So why not? Why isn't that a reversal right there? Well. Why isn't at least part of that from personal knowledge? Incidentally, the washing machine, I think I measured. My wife wrote it down. But I would think either one of us could submit a declaration without the other about the width of the space for the washer and dryer. I don't see why you'd need the other witness, and I don't see why it would take an expert. And it looks like he's got that kind of evidence. Well, Your Honor, I'm looking at his declaration as we speak, paragraph 6, page 2 of his declaration. He goes on and identifies literally ten items. Yep. And item 1 is the same parking spaces that I think we addressed. Yeah. He says it's too steep. Yes. So I guess it means your wheelchair rolls away, kind of like a shopping cart will roll away if the lot is steep. Right. But he's very articulate in item 1. Well, it says here, no handle mounted below the lock of the water closet stall door. It says right here, this is on page 2 of his declaration, line 26 and 27. Right. Right. He doesn't say somebody told me that. He doesn't say I heard about it. It's a rumor. I didn't say I read it on the Internet. He says I encountered that. Yeah. It says the barriers that I encountered included, dot, dot, dot, no handle mounted below the lock of the water closet stall door. Why isn't that firstly good evidence that, in fact, that's the fact? And why doesn't that create a tribal issue of fact for which can all be resolved at trial, at summary judgment? Well, I hear you, Your Honor. I hear your concern. That is something that I believe our experts addressed. I didn't express a concern. I asked a question. Well, what I'm saying is, apparently, the Court saw his declaration. The Court saw our expert testimony. And the he could testify. Look, it's summary judgment, right? Yes, sir. So we reviewed de novo. So I look at this stuff just as though I was the district judge. And the way it looks to me is, paragraph 6 is personal knowledge. Paragraph 8, he's trying to sneak in the expert's report through the back door. He says, I've reviewed the report and I learned from said report, such and such. Well, the report wasn't properly and timely produced, so the fact that he's saying what the report says doesn't really accomplish anything. What I'm trying to say, Your Honor. But paragraph 6 is your problem. No, it's not, Your Honor. What I'm trying to say is he has to have standing. In other words, there's no evidence that says he encountered the following architectural barriers under our Chapman en banc, that's standing. Well, it's also standing under Chapman. We had a big go-round. That's why we went en banc. And you can tell from the en banc decision. And we said, once you have standing because you encountered barriers, then you can claim additional barriers that would cause trouble for you if you went back to the place. Like, for example, he has his standing from paragraph 6 because he encountered barriers. And then he's good enough for some of the paragraph 8 stuff under Chapman, like you can't reach the toilet paper, is one of the things he says in 8. Your Honor, there's not one word in his declaration. He could have visually had personal knowledge of 10 other defects, okay, like the parking and other stuff. 8, you're solid. 8 is just him telling us what the expert said when the expert report wasn't properly and timely filed. But 6 is the problem. It's not. My point is, nothing in his declaration says, he says he uses the word encounter, but there's nothing that says I was actually, I mean, what's the word, what's the definition of the term encounter and how is he using it? Is he saying to us. I mean, it's not a complicated legal term like is. Well, Your Honor, he also says I encountered parking issues, but he never drove a car, but he still uses the word encounter. Well, but look at paragraph 7. Look at paragraph 7. He says, each of these barriers presented powers of access for me and acted to personally deny me full and equal access to the subject rest of it. Now, why isn't this a declaration of personal, you know, he actually experienced these barriers. He couldn't have experienced these barriers without actually seeing them. Why isn't 6 and 7 together perfectly good, terrible stuff, which he will have the chance to see to cross-examine a child? My, again, this is a general statement that he's making, but we don't have any specifics. How do you get more specific? There's no handle mounted below the lock of the water closet stall door. How do you get any more specific than that? There is nothing in here, Your Honor, that says I was about to use the restroom and then, That's about standing because otherwise, He went to the toilet and he says the barriers I encountered. So I figured the guy had to go to the bathroom when he was at the restaurant and have a couple beers. That'll happen. There's not one word that he said that he was going to use the facility. Not one word in there. And that's what standing is about. What do you think each of these barriers presented powers of access for me and acted to personally deny me full and equal access to the subject rest of it? What do you think that language means? Well, he could apply that for the parking space, too. Meanwhile, he never drove a car. But he says each of these. I understand that. He's saying it, but factually, he's not presenting any evidence to the court. And for example, I mean, your answer is that he's not believable? Your answer is that he's lying? Is that your answer? No, no. I'm just saying he didn't present sufficient evidence to articulate that, in fact, he was going to use the This is your case? Water closet. This is your case? I think that's about standing, Your Honor, because otherwise every disabled person can walk into the facility with no intention to use the toilet, no intention to do whatever. For example, he just goes in and says, hey, I just saw defects, and I couldn't use it. Simple as that. But there should be a statement before the court that in good faith I walked in, and I did want to use the toilet. They sell pizza and beer? I'm sorry? They sell pizza and beer? I don't know if they sell beer, but I don't know. Maybe it's Diet Coke and other. Well, it says here, on each occasion I encountered the following architectural barriers, both physical and intangible, that interfered with, if not outright denied, my ability to use and enjoy the goods, services, privileges, and accommodations of the facilities. Do you think she has to say I didn't, I wasn't able to buy pizza, I wasn't able to drink beer, I wasn't able to, you know, do you think she has to sort of list all the things? Well, what I'm just saying is we have to be able to differentiate if someone actually has a standing versus someone doesn't. Because the term he's using in his declaration, it's a very broad term that, you know, it could have been, we don't know from that if, in fact, he meant to use the water closet or not. He might have just walked in and just to see if we're compliant or not. He didn't encounter the toilet if he didn't go in there. No, he can go in there, but if he has no purpose in being in the toilet. No, I mean, how would he encounter the toilet if he didn't go in the bathroom? He says he encountered it. Well, the. I'm not encountering any of the people who are in courtroom two right now, because I'm in a different courtroom. But I'm encountering in one way or another every physical facility and in one way or another the people in this courtroom. From his declaration, I gather that he entered into the restroom. The district judge found that he did have standing, didn't she? On the restroom? About all the barriers. Page 10. Accordingly, plaintiff is entitled to seek recovery for all barriers he encountered, as well as any barriers related to his disability of which he became aware. Right? That's what Judge Anello ruled. I believe there was some issue about standing, for example. I know there are issues, but that's what the ruling was, right? And there's no cross appeal on that ruling, I take it, or any other argument attacking that. Well, we basically, no, we didn't appeal. As I understand your argument, you won in district court because they didn't have evidence, not because of a standing problem. They didn't have evidence. And they didn't have evidence because the judge tossed out the expert report, right? Regarding certain issues, defects, not all of them. Okay. For example, parking report I think found he had no standing, but other issues. Okay. Let's say that for things that require measurements, you're right, that the person who did the measurements didn't, wasn't allowed to present the evidence. I'm still not clear, and I wonder if you could give me a brief answer, why the things that any just normal person can perceive, like no signs, no locks, why that doesn't survive. Just tell me. That would survive subject to a statement to the court that I went in there and I actually was going to use a certain facility. And I saw it. Okay. For example, you could visually see that there's no parking, disabled parking sign, but if he never drove the car, he can't get recovery for it. That's my point. If he says I encountered these things and I could see that they're not there, that's not good enough in your opinion? In my humble opinion, Your Honor. It interfered with my use and enjoyment of the facilities. In my humble opinion, Your Honor, I hear you loud and clear. My only beef with that is, okay, that's a very general term, but you're not specifically telling me that you wanted to use the restroom on that day. So you could use that word and say I encountered that there was no parking space. Just leave it at that. Don't ask a further question. If he was driving a car, then we wouldn't know the answer. What do you make of Anderson v. Liberty Lobby that says we have to draw all reasonable inferences from the declaration of the nonmoving party? I don't dispute that case law. Obviously, that is the law. But all I'm saying is it's a 477 U.S. 242 or 255. What I said is the evidence of the nonmoving is to be believed, and all justifiable inferences are to be drawn in his favor. That's what the Supreme Court says. Why isn't it reasonable to say, look, he says this interfered with my enjoyment of the premises, that the only way he could make that statement is if, in fact, he intended to go there and enjoy the premises. Why isn't that a justifiable inference that the Supreme Court is required to make on summary judgment? A jury doesn't have to make it. A jury can argue anything they want. But on summary judgment, the Supreme Court has told us what inferences we must draw. I concur with you, Your Honor. No dispute in that. But, again, at the end of the day, are we obliged to take a general term like encountered and in its total shape or form give favorable interferences to plaintiff? I don't think — I think that's exactly what Liberty Lobby says. You draw all justifiable inferences. I think we need reason, Your Honor. I think we need reason. For example, he can say I encountered parking issues. But, you know, when there's evidence he never drove a car, here we're saying the same thing. You can — he's listing a laundry list of issues, half of which turn out to be not true. And then most of it he doesn't have personal knowledge. So maybe we have this one item that basically says, oh, the handlebar below the lock wasn't there. But I think the problem we're having is when you identify a hundred items and then you got one little thing, then it becomes very difficult to say you really presented your case in chief in good faith because you come to court and argue parking. You never had standing. And then you say you had measurements. There's no person authenticating that. And now we have this little thing. How, you know, how much of credibility do we give to that little thing to keep the case going? Okay. I think I understand your position. Thank you, Your Honor. Okay. Before I begin, is there any — oh, once again, Scott, I have your banners here. Is there anything you heard here today you think is not adequately responded to in your brief? Well, yes and no. Judge, I have no illusion. I've made a believer out of Judge Kleinfeld regarding the rebuttal expert, the timeliness of our rebuttal expert disclosures. You're right about that. It's really important to exchange those reports timely so you can't just hide in the tall grass until you see what the other side's got and then shape your expert's approach to it. We don't use experts in general, Your Honor. Disabled access cases are more about statutory construction than building constructions. I don't need an architect or a contractor to tell me what the law is. That's — and I sure as heck don't need them telling the jury. That's the judge's job. I'd much rather — I don't want to shell out $150 an hour for someone to hold a tape measure. So we don't disclose experts in normal practice. You can get Mrs. Kleinfeld to do it. I hear she's very good at it. Well, okay. I should say that to Kleinfeld. Discretion being the better part of the valor, I do not believe I'm going to discuss Judge Kleinfeld's wife. But that said — I think we can still do more than $150 an hour. Don't make me laugh. That said, Your Honor, even if the expert report is untimely, if you read Chapman, which adopted the analysis of Doran v. 7-11 in Toto, you see that the disabled person can have actual knowledge of architectural barriers, too. Now, even if you — even if the expert report was untimely, a lot of the measurements and the facts would imply the same thing. This is probably off the record — or not in the record, so maybe you can't answer it. But was the person holding the tape measure that your client alludes to, was that the expert? You know what? I don't know who was holding it. That was one of the things that I wanted to be able to answer. I mean, if it's not in the record, you can't answer it anyway, even if you know about it. I'm just wondering why the declaration came from the — since this is a factual — Correct. — declaration, why the declaration came from your client rather than the holder of the tape measure. Or there was a device there. I forget what it's called. There's the practical answer, and then there's the inside baseball answer. The practical answer is, I don't have to see a car crash, or I don't have to be in a car to testify about what I saw. If a car crashes, I don't have to be in a car to have personal knowledge to testify about the car crash, especially if I see it. No, but if someone says, taking the car crash, another individual in the car told me that the light is red, you can't then say that, can you? Isn't that hearsay? Yes, that is hearsay. Okay. Your declaration says, well, I'm not able to take measurements. I was present while another individual took the measurements. And then it doesn't even say the other individual showed me what the measurements were. If the car is going — if I see the car going through the intersection, to play on that analogy, and I see it crash, that was more along the gist. Where does this guy ever say he has firsthand knowledge of the measurements? If you look at — I was looking at this also, Your Honor. Paragraph 5, page 2. Right. It says, after encountering numerous barriers during my previous visits, and with no changes being made to make the facility more accessible, I decided to document and verify those barriers. I made a mental list of the barriers I encountered, relying on my photographic memory to assist me. While I was not able to take measurements myself, I was present while another individual took measurements and photographs of the barriers present at the subject restaurant. The individual brought a gauged — Yeah, where does it say that he showed me the measurements? Or I watched — I know what the measurements were. I have personal knowledge of the measurement. Fair enough, Your Honor. Point is taken. That would probably fall under the assuming the facts in the light most favorable to the plaintiff, or the nonmoving party category. But that is correct. So that's the problem the district judge had with it. And then the district judge says you tried to get this in the back door by, on paragraph 8, incorporating Reed's settles report. What's your answer to that? I generally disagree with the district court's analysis for the reasons stated. I think that if a person, if a restaurant patron goes to a pizza restaurant and has a beer and has a buffet — he attached his receipt so we know what he had — and is familiar with the area, encounters barriers at the area. And then an expert arrives and takes measurements and tells him these are what the measurements are. This guy doesn't even say the one person he saw taking measurements with Reed's settle. That's true. And you just told us a minute ago. You don't know if it was Reed's settle or not. I don't know who it is, and it is not in the record. So that said, it still acquires — it still amounts to actual knowledge. If he has actual knowledge of it, it would be sufficient. I mean, he says in the declaration that he — I assume he says he learned this from personal knowledge, right? I'm sorry. Which passage are you reading from? I thought I had read it somewhere. It says, if called as a witness, I would testify as before going. So the question is whether we can draw a reasonable inference when he says that this is what happened, that he actually saw the measurements or whether this is something that this person told him. And let's say it's the way — let's say it is, in fact, something that the guy looks at the measurements and calls them out. Is that — I think the inference could be made. That was definitely our intent when drafting the declaration, but it could have been clearer. But let's say it's not the case. Let's say that, in fact, that whoever took the measurements just called out and said — And said this is what it is, and he didn't see it. Then he would still have actual knowledge of the measurements for the purposes of barrier removal of his ADA claim. You don't have to — if the court in Doran v. 711 in Chapman, as the panel knows — Those are washing machine measurements. We could each see the tape measure. But if you couldn't see it and somebody called them out, then I think it would be hearsay. You would need the person that held the tape measure. I don't believe so. And allow me to give you an example from Doran v. 711. President's sense of pressure, right? Well, actually, I'm thinking, well, yeah, that's a really good one. I'll say President's sense of pressure, Your Honor. But the example that Judge Gould used was, let's assume someone can't get into a store. And so they send in their friend because they need to use the restroom. The friend goes in the store, goes into the restroom so that you cannot get in the restroom. It's about 12 inches wide. I couldn't get in the restroom. So he comes back, tells that to the friend. Now, the friend, who's in a wheelchair, didn't go into the store, doesn't have actual knowledge of the barrier because he didn't see it personally. I think we said in Chapman about that problem that he'd need to have encountered a barrier that interfered with his use of standing at all. But once he had standing, then he'd be able to raise the bathroom problem, even though he didn't go to it because the next time he went to that restaurant, he might need to go to the bathroom. Yes, Your Honor. Your Honor, you drew that language from, I believe it was footnote 5 of the Doran opinion. And, yes, that is precisely what you said in Chapman. But he does need to have gone to that restaurant and encountered barriers. You can't just shop around for places to sue. And I'll be honest. There are people who do drive by lawsuits. We're not one of them, but they do happen. Our guy showed up, has receipts, so visited there three times, frequented this place a lot, encountered the barriers, and listed the ones he actually encountered to the best of his knowledge. Okay. Thank you. Thank you, Your Honor. This is how you withstand some of this.
judges: Kozinski, Kleinfeld, Silverman